MARIA C. HARTMAN, d. b., *vs.* THE MAYOR AND COUNCIL OF WILMINGTON, p. b.

New Castle County, February Term, 1894.

**Certiorari. Judgment. Municipal Corporation.**—The action of a municipal board of health in the investigation and abatement of nuisances is not a legal judgment to which a writ of certiorari at common law may issue.

The plaintiff was the owner of a dwelling house in the city of Wilmington, against which proceedings were taken by the Board of Health for the abatement of an alleged nuisance resulting from a wet cellar. The record upon which *certiorari* issued, simply disclosed that the executive officer of the Board of Health *reported* the following nuisances (among others): " M. C. Hartman, 705 South Harrison St., wet cellar." The provisions of the statutes, charter, and ordinances bearing upon the subject are referred to in the argument of counsel.

*H. H. Ward,* for defendant below. A wet cellar is not a common nuisance *per se,* and cannot be declared such except upon proof that an injury has come or may result therefrom; Wood, Nuisance, §§ 497, 499, 501, 503; *Rogers vs. Barker,* 31 Barb. 447; *Harlan & Hollingsworth Co. vs. Paschall,* 5 Del. Ch. 454, 455; *State vs. Peckard,* 5 Harring. 500.

It is not a public nuisance; Wood, Nuisance, §§ 17, 18, 19, 20; nor is it made a nuisance *per se*, by state statute or by city charter or ordinance. The nearest approach to an attempt to create a nuisance by statute or by ordinance in such case is an ordinance passed in 1856, entitled, "An ordinance concerning nuisances, injurious to the health of the city," Charter and Ordinance of Wilmington, 396. But this is by its terms limited in operation to a specified part of the city and it is directed against cellars suffered "to be in an offensive state," which this record does not disclose; and in case of a merely wet cellar, "two members of the Council or of the Board of Health shall have first declared it to be a nuisance," which also this record does not disclose.

It is claimed that under the statutes, charter, and ordinances the board of health has jurisdiction to declare a wet cellar under certain circumstances a nuisance.

The city charter thus defines the powers of the Board of Health :

"The Board of Health shall be invested with all the powers and authority which the Council might or could exercise relative to the object of their institution, and with all powers and authority conferred, and duties enjoined upon members of the Board of Health, by the laws of the State, and by the ordinances of said city, for the preservation of the public health within said City, or within one mile thereof." Wilmington City Charter and Ordinances, § 137.*

"The powers and authority which the Council might or could exercise" in this behalf are defined in the Charter of Wilmington, in the following words: "The Council may also pass ordinances to define and remove nuisances." Charter, 531.

This does not confer upon the Board of Health legislative powers. The powers and authorities conferred and duties enjoined upon members of the Board of Health by the ordinances of said

---

*The references to the charter and ordinances if not otherwise specified are to the edition of 1893.

city, appear to be confined, so far as they touch the present case, to the following provisions :

(1). " Upon complaint to the Board of Health by any tenant of a property, or other person, of water standing upon the surface of a cellar, and such place having been visited by a member of the said Board, and declared a nuisance, it shall be abated within one week after the notice has been given to the owner or other person causing the nuisance, under a penalty of five dollars to be collected, as hereinafter provided." Charter and Ordinances, § 3. of Ordinance 1856 and 1882.

The record, however, does not disclose a complaint by any person, nor that this case is one of " water standing upon the surface of a cellar," nor that the place had been visited by a member of the Board of Health, nor does it appear that the cellar was in a " noisome or offensive state " which is the language of the ordinance.

(2). " The Board of Health shall have power, in case of the prevalence, or of reasonable ground to apprehend the prevalence of malignant disease in this City, to direct specially the cleansing of houses, *cellars*, yards, docks or such other places as the said Board shall consider requisite or prudent for the preservation of the health of the City or for the mitigation of disease, etc." Charter and Ordinances 389–390, § 8 Ordinances 1856 and 1882.

The record, however, does not disclose " the prevalence, or any reasonable ground to apprehend the prevalence of malignant disease in this city," nor that the cellar in question stood in any need of " cleansing."

(3). " The Board when satisfied after an examination that any cellar, room, tenement or building within its jurisdiction occupied as a dwelling place, has become by reason of the number of occupants or want of cleanliness, or other cause, unfit for such purpose, and a cause of nuisance or sickness to the occupants or the public, may direct the owner or owners, or occupants thereof, to have the premises properly cleansed, or if they see fit, require the occupants to remove or quit the premises within such time as the Board may

deem reasonable," etc. Charter and Ordinances, 393-394, § 11, Ordinance 1856 and 1882.

But the record does not disclose a single jurisdictional fact mentioned in this provision. On none of these provisions, then, can the jurisdiction be sustained.

There appear to be no other ordinances expressly referring to the rights of the Board of Health with reference to wet or unclean cellars. In Section 2, of the ordinances of 1856 and 1882, Charter and Ordinances, 384, 385, there is an enumeration of the general powers of the Board of Health, which, if there were no express provisions as to wet cellars, and if the record disclosed a case properly within the general phrases used, might include a wet or unclean cellar; but as the same ordinance afterwards takes up wet or unclean cellars specifically in the three instances above enumerated, the ordinance must be construed as having fully explained and defined the jurisdiction of the Board of Health over wet or unclean cellars in those provisions which refer to them expressly. See Sutherland, Statutes, §§ 325–329.

The powers and authorities conferred and duties enjoined upon members of Boards of Health, "by the laws of the State," in no respect enlarge or modify the powers or duties of the Board of Health of Wilmington, under the Charter and Ordinances of the city. 16 Del. Laws, Ch. 345; Rev. Code (1893) 298–301.

From the foregoing review of the state laws, Charter and Ordinances of the City of Wilmington, it would appear that the plaintiff below must depend for its jurisdiction in this case upon the general provisions of § 137 of its charter, and the method of procedure therein laid down. This section, so far as it is material now to quote, reads as follows:

"And the said Board of Health, upon complaint that a nuisance has been created, erected or continued, and is continued within said city or within one mile of the boundaries thereof, which may prove injurious to the health of the inhabitants thereof, shall hear and determine such complaint, and if necessary view and examine the matter or thing complained of, and if the said Board shall adjudge the place or thing complained of to be a nuisance whereby the health of the inhabitants of said

city is or may be injured the said Board shall give directions to cleanse, remove, abate or remedy the same to the person or persons causing or producing such nuisance, or to the owner or owners, agents, tenants or occupants of the premises wherein the said nuisance exists, etc.''

This provision, which defines the method of procedure in case of a nuisance prejudicial to the health of the city, is intimately connected with the definition of the powers of the Board of Health over such nuisances immediately proceeding, and must be construed in connection with it. It would therefore seem that in every case of a nuisance cognizable under any statute or ordinance by the Board of Health this method of procedure here laid down must be strictly followed, even though such statute or ordinance should be silent upon the method of procedure in any specified case or provide a different procedure.

The charter is the constitution of the city government, and every ordinance of the city and all powers exercised by its officers, derive their strength and validity from it, and must be limited by and conform to its provisions; Dillon Mun. Corp. §§ 89-91, note 3; Wood, Nuisances (11th ed.), 875, §§ 738-741; Cooley, Const. Limit. (4th ed.), 231, 235, 248, 250; 2 Am. & Eng. Encyc. of Law, 435; Sutherland, Stat. 325-329.

The proceedings of the Board of Health for the City of Wilmington, provided in the charter of said city, whereby said Board passes upon nuisances injurious to the health of the inhabitants of said city, are essentially judicial. The language of the section of the charter conferring jurisdiction upon said Board to pass upon the question of such nuisances, precludes the contention that the duties of the Board in this behalf are merely ministerial or merely legislative, and makes the proceedings in all necessary points purely judicial.

The machinery of the Board is set in operation "*upon complaint*, that a nuisance has been created, erected or continued, and is continued within said city, or within one mile of the boundaries thereof, which may prove injurious to the health of the inhabitants thereof."

Whereupon, it is provided that the Board "shall *hear* and *determine* such *complaint*, and if necessary, *view* and *examine* the matter or thing *complained* of."

The power to judicially determine the fact is then attempted to be conferred in the following words:—"if the said Board shall *adjudge the place or thing complained of to be a nuisance*, whereby the health of the inhabitants of said city is or may be injured," then the Board shall act as the charter provides in that behalf.

Lastly, as the consequences of its prior judicial determination of the fact of such a nuisance as is or may be injurious to the health of the inhabitants of the city, the Board is given power to enforce its judgment and decree by civil and criminal prosecutions, and criminal and civil forfeitures and penalties. All the marks of a judicial proceeding thus appear (1) a *charge* or *complaint*, (2) a *trial* upon which this charge or complaint is "heard," "determined," "viewed" and "examined", (3) a *judgment* that the charge or complaint is sustained or otherwise, (4) process or mandate of *execution* by which the alleged nuisance may be abated, and lastly, (5) a *penalty* imposed upon the owner, either by way of a pecuniary forfeiture upon a civil action or fine or imprisonment upon a criminal prosecution. Charter of the City of Wilmington, § 137; 17 Del. Laws Ch. 207.

The judicial functions above outlined appear upon the face of the statute to be summary, without notice to the party charged, or power on his part to appear and defend, without the intervention of a grand or petit jury, and absolutely without appeal. City Charter, § 137. The method provided for the exercise of these judicial functions must therefore be strictly followed.

Under the rulings of the Municipal Court, from whose judgments in this behalf the right of appeal is expressly taken away, the only issues possible to be raised in the criminal prosecution before it provided in this section of the City Charter, are (1) has or not the Board of Health in fact "adjudged the place or thing complained of to be a nuisance, whereby the health of the inhabitants of said city is or may be injured," (2) is or not the defendant

the " owner, agent, tenant or occupant of the premises," (3) has the
Board of Health notified him or her to abate, &c., and (4) has or
not such owner, agent, tenant or occupant " failed, neglected, omitted
or refused to comply with the directions of said Board of Health
as aforesaid."

Under the plan of procedure laid down in § 137 of the City
Charter, and its practical workings, as disclosed by this record,
every safeguard thrown around the property and liberty of the
citizens of this State by the Bill of Rights and Constitution, every
right of property and liberty which the State Constitution in its
preamble declares that " all men have by nature," and every senti-
ment of justice and fair dealing, is violated; Del. Const. Pre-
amble, Art. 1, §§ 4, 7, 8, 9, Art. 6, §§ 1, 4, 15, 24.

Under the Constitution of this State, " every man for an in-
jury done him in his person, movable or immovable possessions,
shall have remedy by the due course of law, and justice adminis-
tered according to the very right of the cause and the law of the
land ; " Del. Const. Art. 1, § 9.

The fact that the injury so suffered is by virtue of the opera-
tion of a statute, or is according to mere forms prescribed by
statute law, is wholly immaterial, if the injury or damage is im-
posed contrary to the " due process of law," or " the law of the
land ; " Cooley, Const. Lim. (4th ed.) 438–441 and notes.

*Certiorari* is the only and appropriate remedy in this case;
*Murphy, et al., vs. The City of Wilmington,* 6 Houst. 108–138;
*Keogh vs. Mayor and Council of Wilmington,* 4 Del. Ch. 500;
Dillon Mun. Corp. (3d ed.) §§ 440, 925, 929, 908; Harris, *Certi-
orari,* §§ 1, 17, 173, 194; *Van Wormer vs. Albany,* 15 Wend.
262; *Robinson vs. Sup. of Sacremento,* 16 Cal. 208, 214, &c.; *Stone
vs. Mayor, &c., of New York,* 25 Wend. 157, 166, &c.; *Hyslop vs.
Finck,* 99 Ill. 171, 183, 184, and cases elsewhere in this brief cited.

Notwithstanding that the General Assembly has apparently
attempted to confer upon the Board of Health of the City of Wil-
mington certain judicial powers, it is not a *court* either by the
terms of its creation or within the meaning of the Constitution of

the State of Delaware; City Charter. §§ 136, 137, 138 ; Del. Const. Art. 6, § 15 ; 4 A. & E. Encyc. of Law 447–450.

The creation or maintenance of a public or common nuisance is a criminal offence ; Wood, Nuisance, §17.

Not having been established as a court within the meaning of the Constitution, the General Assembly cannot, by law, give to the Board of Health criminal jurisdiction of nuisances ; Del. Const. Art. 6, §§ 1, 4, 15.

The jurisdiction conferred by the General Assembly upon the Municipal Court of the city of Wilmington by the city charter, § 137, is solely for the specific offence of "failing, neglecting, omitting or refusing to comply with the directions of said Board as aforesaid," leaving the trial of the fact of nuisance or no nuisance exlusively to the Board of Health ; City Charter, § 137.

One of the jurisdictional facts required, but not disclosed, by the record is that a *complaint* was made to the Board of Health that a nuisance had been created, erected, or continued, and is continued within the city of Wilmington, or within one mile of the boundaries thereof, which may prove injurious to the health of the inhabitants thereof.

So far as the record shows, there was no *complaint* by any person of this cellar, but the Board of Health by its executive officer, Mr. McKinney, itself ascertained the fact that the cellar was wet. The record therefore, plainly and unequivocally negatives this jurisdictional fact of a complaint to the Board, of Health by anybody. The law having provided that the machinery of the Board should be set in motion by such complaint, it is a prerequisite to the Board's taking jurisdiction in any such case.

There having been no such complaint the Board of Health could not, of course, "hear and determine such *complaint*" or " view and examine the matter or thing *complained* of" or "adjudge the place or thing *complained* of to be a nuisance," etc.

Because of the lack of the specific complaint, all of the subsequent deliberations of the Board of Health on the matter in ques-

tion, including the order of abatement, etc., are also without the jurisdiction and void.

But without regard to whether there was a complaint, such as the charter contemplates or not, the record does not show that there was any " *hearing* and *determination* " of the matter before or by the Board, or that it " viewed " or " examined " the place or thing which was reported to it by its executive officer ; upon this point, the record simply says " above report of Mr. McKinney having been read, on motion of Mr. Lewis the places, etc."

No witnesses appear to have been called to show the condition of the cellar, whether its condition was permanent or temporary, or even to show how wet it was, or the cause thereof, or by whose negligence or default it was wet, nor does there appear to have been any testimony before or inquiry by the Board as to whether any ill effects had or might result from the condition of the cellar to the health of the inhabitants of the city.   In brief, there appears to have been no testimony upon or inquiry into the main question which the Board had to consider and determine, that is to say, whether this cellar, which it itself and alone asserted to be wet, was or not a " nuisance whereby the health of the inhabitants of the city might be or was injured."

The only possible conclusion from the record is that simply upon the reading or Mr. McKinney's " report " the Board hastened to " adjudge " that the batch of places and things reported by him were " nuisances " detrimental to the public health, and hereupon ordered them in a batch to be abated in ten days.   Such action is clearly incompetent ; *State vs. Trenton*, 36 N. J. L. 283.

But the words " hear and determine," " view and examine" and the word " adjudge" import a hearing of a certain sort, to wit, a judicial or *quasi*-judicial hearing and a judicial or *quasi*-judicial adjudication.

Essential requisites of a judicial or *quasi*-judicial hearing and determination are notice to the person involved or interested in the inquiry and judgment an opportunity to be heard by himself or his attorney, and an opportunity to defend by calling witnesses

upon the facts to be determined; Del. Const., Art. 1, §§ 7, 9; Cooley, Const. Limit. (4th ed.), pp. 438, 504 and note 2; *Hutton vs. City of Camden*, 39 N. J. L. 122; *State vs. Trenton*, 36 N. J. L. 283; *Turnpike Co. vs. Hall*, 17 N. J. L. 337; *Belcher vs. Allen*, 90 Mass. 327; *Com. vs. Cambridge*, (Tyng, J.), 4 Mass. 627; *Met. Board of Health vs. Heister* (Miller, J.), 37 N. Y. 681.

But this record shows that the whole proceeding was based upon a private and secret investigation by the Board itself, through its executive officer; that no notice was served upon Mrs. Hartman before the hearing and determination, and even afterward, only at a different house than the one complained of; and that she had no opportunity to appear and defend charge of maintaining a nuisance on her property.

Section 137 of the charter of Wilmington provides certain penalties for the failure, neglect, omission or refusal of the person notified by the Board, to comply with the directions of the Board, based upon the adjudication of the Board that the place or thing complained of was a nuisance, etc. These penalties consist of the imposition of a fine and costs by the Municipal Court, and in default of payment thereof, imprisonment until said fine and costs are paid, or otherwise discharged by law; and from the judgment of the Municipal Court in such cases, appeal is expressly taken away.

The record discloses that these supplementary proceedings were instituted against Mrs. Hartman in this case.

In such a prosecution, as before explained, the question of nuisance is not inquired into before the Municipal Court; it having by that Court been adjudged that that question has been theretofore conclusively settled by the adjudication of the Board of Health. Conviction is, therefore, almost inevitable, since the merits of the case are not inquired into.

The real hearing upon which the fine and imprisonment are based, is had before the Board of Health.

As the hearing before the Board of Health appears by the record to have been without notice to the defendant below and opportunity to appear and defend, or trial by jury, she was thereby

deprived of liberty and property without the judgment of her peers, and contrary to the law of the land; Del. Const. Art. 1, §§ 7, 9; Cooley, Const. Lim. (4th ed.) pp. 438, 504 and note 2; *Hutton vs. City of Camden*, 39 N. J. L. 122; *Belcher vs. Allen*, 90 Mass. 327, etc.; *Com. vs. Cambridge*, (Tyng, J.) 4 Mass. 627; *Clark vs. Syracuse*, 13 Barb. 32.

"The question whether a nuisance exists, cannot be settled conclusively except in a regular course of law, before the established courts of law or equity;" 2 Am. & Eng. Encyc. of Law, 432, note 6; *Rogers vs. Barker*, 31 Barb. 447.

A Board of Health can not declare anything to be a nuisance which is not such at common law, or which has not been made such by statute of the State, or by charter and ordinances of the city; 2 Am. & Eng. Enc. of Law, 432; 1 Dill. Mun. Corp. (3d ed.) §§ 374, note 5 and 379; Wood, Nuisances, § 738-741; *Hutton vs. Camden*, 39 N. J. L. 122; *Schuster vs. Met. Board of Health*, 49 Barb. 450, 452.

*George A. Elliott*, City Solicitor, and *Charles M. Curtis*, for plaintiff below.

I. The power of the State summarily to destroy or remove nuisances detrimental to public health without judicial trial or process, is a principle of the common law, established long before the adoption of the Constitution of Delaware, or of the United States, and it has never been abrogated by any constitutional provisions for the protection of life, liberty and property, although the exercise of the right might result in the destruction of property. Andrews, J., in *Lawton vs. Steele*, 119 N. Y. 226–235; Magie, J., in *Newark, &c., R. R. Co. vs. Hunt*, 50 N. J. L. 308–316.

It follows that as this power of abatement must be performed by agents of the State, it may be delegated to executive officers such as Boards of Health, to proceed without the delay of judicial proceedings in cases analogous to those where the remedy by sum-

mary abatement existed at common law ; *Lawton vs. Steele, supra.*

There is no constitutional provision in Delaware requiring notice of proceedings to abate nuisances detrimental to public health either to the person upon whose premises the nuisance exists, or to him who causes it. The provisions of §§ 7, 8, 9, of Art. I, as to the due course of law relate to the rights of accused persons in criminal prosecutions and " the law of the land " means indictment by grand jury and trial by petit jury in criminal proceedings. Sec. 8 is not a limitation of the general power and authority of the State over property with reference to taxation or the exercise of police powers to preserve the public health or morals and §§ 7 and 9 have no application to summary proceedings of a *quasi-*judicial character, such as those arising under the law of eminent domain, abatement of nuisances, and other exercises of police power; and the principal rules as to notice of judicial proceedings do not apply to them; *Wilson vs. Baltimore and Philadelphia R. R. Co.,* 5 Del. Ch. 524.

Preservation of health is one of the permanent objects of government, included in the police power of the State or municipality, and subject to which every citizen holds his property. To accomplish their purpose Boards of Health are necessarily invested with large and arbitrary powers, and the proceedings are frequently of a summary character, although they may impair or destroy valuable rights and property of individuals.

II. It is not essential to the validity of proceedings of a Board of Health, whereby a certain place or thing is declared a nuisance detrimental to public health, that it should therein appear that notice of such proceedings was given to the owner of the place or thing affected. The proceeding is *in rem,* and the determination of the Board is valid and conclusive so far as the *res* is concerned.

This is a writ of *certiorari,* and the sole question is the validity of that record. Notice to the owner of the thing or place under investigation and opportunity to him for hearing, prior to

the decision of the Board as to the existence of a nuisance injurious to health, is not required by statute or ordinance.

Whether it is sufficient to justify further action, or would protect officers who should abate the nuisance, or furnish a ground of action by the municipality against the owner to recover the cost of abatement of the nuisance, does not arise here and cannot be before the court in this proceeding; *Salem vs. Eastern R. R. Co.*, 98 Mass. 431; *Miller vs. Horton*, 152 *id.*, 540, 543, 548-556; *Newark, etc., Horse R. R. Co. vs. Hunt*, 50 N. J. L. 308.

Cases wherein a contrary view have have been expressed are not satisfactory authorities, if they be cases where the ulterior remedy of the Board of Health was being enforced, and unless they be cases where the validity of the record was directly disputed as in a writ of *certiorari*.

All that the law requires is that judgment shall not pass against the owner of the property, condemning him to pay the costs of suppressing or abating an alleged nuisance existing on his premises, or the cost of doing any other work on his premises for the benefit of the public health or safety, without a hearing upon the question as to the existence of the nuisance, and the necessity of the work, as well as upon the other questions involved. And the hearing may come before or after the alleged nuisance is abated or the work is done, as the circumstances may require. The matter is governed by the necessities of the case.

In the case at bar, notice by law is provided and no step can be taken to enforce the decision of the Board as to the fact of a nuisance until notice is served on the proper person. It is the duty of the Board after adjudication of the nuisance to " give directions" for its abatement within a time to be prescribed by the order, and if the direction be not observed within the time prescribed, then it may be done by the Board, or its agent, and the expense recovered of the person causing the nuisance; Charter § 137.

The plaintiff in the *certiorari* cannot now complain that any constitutional or natural right has been infringed by the action of the Board of Health. Her property has not been destroyed, no

entry has been made upon her premises, and as far as her rights are concerned they are, as yet, unaffected.

If entry is made upon her premises to abate the nuisance, she may then set up her constitutional or inherent right to a hearing; and also when she is arrested for not complying with the direction to abate the nuisance, she may assert her right and have the proceedings annulled if invalid, or if she so desires, she may in the Municipal Court contest the fact of the existence of a nuisance detrimental to the public health.

So, also, if the nuisance is abated by the Board of Health, and suit brought to recover from her the cost of the abatement, she may then have her hearing and contest every fact on which the action of the Board was based.

It cannot be claimed that the defendant below was deprived of any inherent or constitutional right, because by law an appeal from the Municipal Court was denied, for by the Constitution of Delaware the Legislature may confer final jurisdiction of nuisances upon inferior Courts and Justices of the Peace, and may deny trial by jury and the right of appeal; Const. of Delaware, Act VI, § 15.

III. A municipality, and in this case the Board of Health, its agent, has the same right of abatement of common nuisances without notice that a private person has, and by law the duty to so abate is imposed upon upon it. Every thing or place which is in such condition as to be detrimental to public health is *per se* a common nuisance.

The municipal authority is charged according to some authorities with the same responsibility to the owner of the place or thing affected by the abatement of the nuisance as the private person abating the nuisance. In the determination of this liability, the fact of notice prior to the abatement is immaterial. The sole question that can be raised is, was it a common nuisance? If so, both the private person and the municipality are fully protected and the individual whose property has been affected, has no remedy, for no right has been infringed. He has no right to maintain a common

nuisance, and holds his property subject to the right of the State to prevent and remove nuisances, and in so doing to destroy his property, if necessary to do so effectively.

A Legislature may invest a municipal corporation with power to abate nuisances summarily without resort to legal proceedings.

Familiar instances of this are removal or destruction of wooden buildings within prohibited limits, and the capture and killing of unregistered dogs and cattle running at large.  *Baumgartner vs. Hasty*, 100 Ind. 595 ; *King vs. Davenport*, 98 Ill. 305 ; *Blair vs. Freehand*, 100 Mass. 136.

IV. The city may by ordinances define and remove nuisances ; Charter, § 31 ; *Hart vs. Mayor of Albany*, 3 Paige 213, 218.

Water standing in a cellar, *i. e.* a wet cellar, has been defined a nuisance by ordinance.  Charter, Laws and Ordinances, 386. Therefore, it is not competent for an owner to show that a wet cellar was not a nuisance; *Train vs. Boston Defecting Co.*, 144 Mass. 523.

V. The Board of Health has final jurisdiction in determining the fact of a nuisance which they order to be abated ; *Kennedy vs. Board of Health*, 2 Pa. 366 ; *Green vs. Savannah*, 6 Ga. 1 ; *Raymond vs. Fish*, 51 Conn. 80 ; *North Chicago vs. Lake View*, 105, Ill. 202.

VI. Within the scope of the authority, the proceedings of the Board of Health are presumed to have been according to law and rightly done ; *Salem vs. Eastern R. R. Co.*, 98 Mass. 431–452.

VII. A complaint is not necessary to the validity of acts of the Board of Health declaring a thing or place a nuisance.

The Board and agents may act upon their own knowledge or information ; *Swett vs. Sprague*, 55 Me. 190.  And a formal complaint of the existence of a nuisance serves the function of imposing a duty on the Board of Health to investigate the alleged nuis-

ance, and is not and was not intended as conferring a power to so investigate. They can act without a formal complaint, but they are bound to act if there be a formal complaint made.

CULLEN, J., delivered the opinion of the Court.

This is a *certiorari* under very peculiar circumstances, and we will not attempt to go into any extended review of the different matters and principles upon which this case rests, but shall merely state the general principles involved, upon which we dismiss these exceptions.

It appears that there was a proceeding originally commenced under an act of Assembly, vesting in the Board of Health of this city certain powers and authority in relation to matters mentioned under their immediate jurisdiction. The result of the action of the Board of Health is not a judgment. This is a power that is conferred and which is acted on by the Board of Health by force of the police power, which is part of the sovereignty of the State. The State may delegate those powers, and it has in this case delegated to the Board of Health the power, upon complaint coming before them, to determine whether or not a thing is deleterious or injurious to the community generally, and they may examine that matter and inquire into and investigate it. And upon this investigation, if the person upon due notice does not remove that which is deleterious—you may call it a nuisance—then the Board of Health have the right to remove or abate the nuisance.

It is contended that there was no notice given in this case before they proceeded. Every person, of course, has his right to a day in court, but the Board of Health act upon these matters like a Grand Jury, for instance, where there is a charge against a person—on one side of the matter. When the matter is determined by them it is not a judgment; they simply determine that a certain matter is a nuisance. Then when it is so determined it is their duty to notify the party that a nuisance exists on his premises, and that he is required to remove it within a certain time, which is

by them specified. The act does not prescribe a particular time in which it must be done, because the time it takes to remove it must necessarily depend upon the nature and character of the nuisance to be abated. Five days might be enough in one case, while it might take two, three, five or six months in another.

When it is determined by the Board of Health, acting under the police power vested in them by the Legislature or the sovereign power of the State, that a certain thing is a nuisance, it becomes their duty for the first time to notify the party of the fact that a nuisance exists on his place—that is, notice is given to him of that fact; it is nothing more or less in our judgment than that "a nuisance exists on your place, and we require you to remove it in so many days." The party's rights have not been invaded; it has been a mere matter of investigation. And then he may, if he see fit, have his day in court. He has an impartial, full and complete remedy. For the first time the case enters into trial when both parties are represented. He may appeal to the Chancellor for an injunction to stay the action, and commence an action whereby his rights may be determined by proceedings in chancery. If he sees fit to allow the matter to go on, and if the Board of Health have violated the powers vested in them in removing the matter, then they become personally liable.

Were it otherwise, what would become of the community, and what would police regulations amount to? Parties must act in an emergency; if the Board of Health act in an emergency, still there is time left for the opposite party, if he wishes, to contest their action. Their action is not a legal judgment such as is contemplated under the law, to which a *certiorari* at common law may issue.

We think, therefore, under the circumstances, that this is not a case in which a *certiorari* would lie, and therefore dismiss the exceptions.